<u>NOT FOR PUBLICATION</u>                              [Docket No. 1]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| In re:<br><br>COASTAL BROADCASTING SYSTEMS,<br>INC.,<br><br>    DEBTOR.<br><br>EDWIN ROSENFELD and WILLIAM E.<br>HUR JR.,<br><br>    APPELLANTS,<br><br>COASTAL BROADCASTING SYSTEMS,<br>INC.,<br><br>    APPELLEE. | Civil No. 12-5682(RMB)<br><br>**OPINION** |

Appearances:

Joseph M. Garemore, Esquire
Brown and Connery, LLP
360 Haddon Avenue, P.O. Box 539
Westmont, N.J. 08108

        Attorneys for Appellants

Ira R. Deiches, Esquire
Deiches & Ferschmann, P.C.
25 Wilkins Avenue
Haddonfield, N.J. 08033

        Attorneys for Appellee Coastal Broadcasting Systems,
        Inc.

**BUMB,** United States District Judge:

On July 6, 2012, the Honorable Gloria M. Burns, United States Bankruptcy Judge for the District of New Jersey (the "Bankruptcy Court"), entered an Order confirming Debtor Coastal Broadcasting System Inc.'s ("Coastal") plan of reorganization.  Appellants Edwin Rosenfeld and William E. Hur Jr. (the "Appellants") appeal that Order.  For the reasons that follow, the Bankruptcy Court's Order is AFFIRMED.

I.   Background

Appellants are former Coastal shareholders.  On December 31, 2008, Appellants finalized the sale of their shares in Coastal to Coastal.  As part of this transaction, Appellants signed an agreement (the "Agreement") titled "Subordination and Intercreditor Agreement."  Under the Agreement, Appellants' claims against Coastal and liens on the assets of Coastal were subordinated in all respects to the claims and liens of Sturdy Savings Bank ("Sturdy"), which had provided other loans to Coastal.

Two provisions of the Agreement are particularly relevant to this appeal.  First, paragraph 3.1 of the

2

Agreement discusses a variety of potential proceedings, including the reorganization of Coastal.  Agreement ¶ 3.1 ("upon or in connection with any dissolution, winding up, sale or liquidation, arrangement or reorganization of [Coastal]").  Second, paragraph 3.2 of the Agreement provides that:

> If any proceeding described in Section 3.1 is commenced, [Sturdy] is irrevocably authorized to . . . take such other actions (including without limitation, voting the Subordinated Debt) as it may deem necessary or advisable[.]"

Under the terms of the Agreement "Subordinated Debt" includes the promissory notes held by the Appellants. Agreement at 2.

On January 9, 2011, Coastal filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code").  Following Coastal's petition, Coastal and Appellants submitted competing plans of reorganization. Coastal's plan included five different classes of claims, with Coastal's own claims receiving top priority and Appellants' claims in Class IV.  Under Coastal's plan, only Class III was considered to be "impaired" under 11 U.S.C. § 1124.  Claims are "impaired" "if the plan of reorganization does not provide them with full recovery." In re Insilco

3

Techs., Inc., 480 F.3d 212, 215 n. 5 (3d Cir. 2007).

Impaired status is significant because impaired classes

"are entitled to vote whether to accept the plan."   Id.

        Appellants made three objections to confirmation of

the plan that are relevant to this appeal.  First, they

argued that their claims were, in fact, impaired (thus,

entitling them to a vote).  Second, they argued that it was

improper to classify them in a separate class from other

unsecured creditors.  Third, Appellants objected to the

feasibility of the plan under 11 U.S.C. § 1129(11).  That

provision requires the bankruptcy court to find that

"[c]onfirmation of the plan is not likely to be followed by

the liquidation, or the need for further financial

reorganization, of the debtor . . . unless such liquidation

or reorganization is proposed in the plan."  11 U.S.C. §

1129(11).

        On March 23, 2012, Coastal filed a certification of

balloting indicating that Class III claimants, the only

class Coastal considered to be impaired, had voted in favor

of Coastal's plan.  On March 28, 2012, the Bankruptcy Court

held a confirmation hearing on Coastal's plan.  During the

hearing, the Bankruptcy Court questioned whether: (1) in

4

the event the Bankruptcy Court found Appellants' claims to
be impaired, Sturdy was entitled to vote Appellants' claims
under paragraph 3.2 of the Agreement; and (2) in such a
scenario, Sturdy would vote in favor of the plan.  [Docket
No. 18 at Ex. 2, Transcript of Confirmation Hearing at
210:10-213:15].  In response, Sturdy represented that it
would vote in favor of the plan in such a scenario.  Id. at
214:9-12.  Following the hearing, the Bankruptcy Court
directed the parties to address whether Sturdy was entitled
to vote on behalf of the Appellants under paragraph 3.2 of
the Agreement.  Appellants' submission, filed on April 3,
2012, made only one argument: that Sturdy did not have any
voting rights assigned to it under the plain language of
the Agreement.  [Docket No. 18 at Ex. 9].

On July 6, 2012, the Bankruptcy Court issued a
Memorandum Opinion.  The Opinion found that, while
Appellants' claims were properly classified in their own
class, Coastal's plan improperly designated Appellants'
claims as unimpaired.  The Bankruptcy Court found that they
were impaired because any claims Appellants had had would
be extinguished under the plan.  That finding presented a
complication because, as discussed above, in order for a

bankruptcy court to approve a plan with impaired creditors under 11 U.S.C. § 1129(a), and not under the cramdown procedure outlined in § 1129(b), each impaired class would be required to vote to accept the plan.[1]  And, in this case, the plan was presented for approval under § 1129(a) but the Appellants had not voted to accept the plan.

The Bankruptcy Court resolved this complication by finding that: (1) under Paragraph 3.2 of the Agreement, Sturdy was entitled to vote Appellants' debt; (2) Sturdy's ability to do so would not violate the Bankruptcy Code; and (3) in light of Sturdy's multiple representations to the Court that it was in favor of the plan and its representation that it would vote Apellants' claims in favor of the plan, Sturdy could be deemed to have voted for confirmation of the plan.  Having resolved this issue, the Bankruptcy Court found that it could approve the plan under Section 1129(a) and did so.  Appellants now appeal that ruling.

II. <u>Standard</u>

---

[1]    11 U.S.C. § 1129(a)(listing conditions for approval including 11 U.S.C. § 1129(a)(8)(requiring all classes to either vote to accept the plan or be unimpaired)); 11 U.S.C. § 1129(b)(allowing approval where all the conditions of Section 1129(a) are met except a(8), so long as other conditions are met.

On appeal from a final order of the Bankruptcy Court, this Court reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear errors, and its exercise of discretion for abuse thereof. In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

III. Analysis

On appeal, Appellants present five challenges to the propriety of approval under Section 1129(a) and argue that the plan could only have been approved under Section 1129(b). They argue that:

(1)   the plan was not feasible;

(2)   their claims were improperly placed in their own class;

(3)   the Agreement did not entitle Sturdy to vote Appellants' claims;

(4)   that, even if it did, such an entitlement would be contrary to the Bankruptcy Code; and

(5)   that Sturdy could not be "deemed" to have voted for the plan.

The Court addresses each argument in turn.

A.   Feasibility of Plan

11 U.S.C. § 1129(a)(11) requires that a plan be feasible in order to be confirmed.  11 U.S.C. §

7

1129(a)(11).  The Bankruptcy Court's determination that a
plan is feasible is reviewed for clear error.  In re DBSD
N. Am., Inc., 634 F.3d 79, 106 (2d Cir. 2011).

     In determining whether a plan is feasible, the Court
considers whether "[c]onfirmation of the plan is not likely
to be followed by the liquidation, or the need for further
financial reorganization, of the debtor . . . , unless such
liquidation or reorganization is proposed in the plan."  In
re Am. Capital Equipment, LLC, 688 F.3d 145, 156 (3d Cir.
2012)(quotation and citation omitted).  Success need not be
guaranteed, but a plan must at least present "a realistic
and workable framework" that is "reasonably likely to
succeed."  Id. (quotations and citations omitted).

     Here, the Bankruptcy Court found that the plan was
feasible and Appellants have provided little reason to
disturb that finding.  In particular, the Bankruptcy Court
found, and Appellants do not submit any facts to dispute,
that there was sufficient cash on hand to: (1) pay
administrative expenses; (2) pay fees due to the Bankruptcy
Court and to the U.S. Trustee; and (3) pay amounts due to
Sturdy and to the unsecured creditors.  Nor do Appellants
dispute that, in the event the amount of cash on hand was

insufficient to pay unsecured creditors, Coastal had access to an escrow account that would cover any shortfall. Appellants only offer that Coastal was operating on slim margins each month.  With this backdrop, this Court cannot say that the Bankruptcy Court's finding as to feasibility was clear error.

      B.   Placement of Appellants in Class IV

     A bankruptcy court's decision to approve the placement of claims is reviewed for abuse of discretion.  Zentek GBV Fund IV v. Vesper, 19 F. App'x 238, 248 (6th Cir. 2001).

     11 U.S.C. § 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Bankruptcy courts have wide latitude in deciding whether claims have been properly classified. See In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987)("[I]t remains clear that Congress intended to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case.").  And the "grouping of similar claims in different classes" is permitted so long as it is reasonable and is not done for fraudulent purposes.  In re

Nickels Midway Pier, LLC, No. 03-49462, 2010 WL 2034542, at
*7 (Bankr. D.N.J. May 21, 2010)(quotation and citation
omitted); In re W.R. Grace & Co., 475 B.R. 34, 110 (D. Del.
2012).

Here, there is nothing unreasonable about placing
Appellants in a separate class from other unsecured
creditors, given that their claims, unlike other unsecured
creditors' claims, were uniquely subject to subordination,
as well as the Agreement's voting rights provision, as
discussed below.  In re Johnston, 21 F.3d 323, 328 (9th
Cir. 1994)(finding it appropriate to separate claims based
on legal character of claim); In re Lisanti Foods, Inc.,
329 B.R. 491, 510 (D.N.J. 2005)(recognizing same); In re
Kaiser Aluminum Corp., No. 02-10429, 2006 WL 616243, at *13
(Bankr. D. Del. Feb. 6, 2006)("The Senior Subordinated Note
Claims in Subclass 9A are legally distinct from other
Claims and Interests and are properly classified in a
separate Subclass in light of the contractual subordination
provisions contained in the Senior Subordinated
Indenture.").[2]  Accordingly, there was no abuse of

---

[2]    See also In re Am. White Cross, Inc., 269 B.R. 555, 559 (D. Del.
2001)(alluding to bankruptcy court's recognition that
"subordinated claims are usually addressed in bankruptcy by

discretion by the Bankruptcy Court in making this determination.

In any event, this issue is of no consequence.  As discussed in more detail below, Sturdy was, in fact, entitled to vote Appellants' claims.  And Appellants do not dispute the Bankruptcy Court's finding that Sturdy would have voted Appellants' claims in favor of the plan.  Given this, shifting Appellants' claims from Class IV to Class III would be merely a change in label.  The Bankruptcy Court would then be permitted to approve an otherwise substantively identical plan in which Appellants receive nothing while their fellow Class III creditors receive a distribution.  See 11 U.S.C. § 1123(a)(4)(providing that a holder of a claim may agree to a less favorable treatment than peers in its class); In re W.R. Grace & Co., 475 B.R. 34, 125 n. 83 (D. Del. 2012)(recognizing that claimant could elect to receive less favorable treatment than other members of the same class).

---

creating separate classes of creditors or other treatment."); In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 225-26 (Bankr. D.N.J. 2000)(finding it appropriate to classify general unsecured creditors separately from claimants subject to subordination agreement); In re Unbreakable Nation Co., 437 B.R. 189, 200 (Bankr. E.D. Pa. 2010)(finding that unsecured claims could be placed in separate classes based on whether they were subordinated).

Accordingly, any error (and there was none) would have been harmless and would not justify disturbing the plan. See Kane v. Johns-Manville Corp., 843 F.2d 636, 647 (2d Cir. 1988)("The harmless error rule has been invoked in the bankruptcy context where procedural irregularities, including alleged errors in voting procedures, would not have had an effect on the outcome of the case."); In re Red Mountain Machinery Co., 451 B.R. 897, 907 (Bankr. D. Ariz. 2011)("Consequently even if there is a technical legal question as to the propriety of the classification, it makes no practical difference and is therefore harmless error . . . ."); In re Travelstead, 227 B.R. 638, 652 (D. Md. 1998)(finding any error by bankruptcy court in classification was harmless where it would not alter the result).[3]

    C.    Sturdy's Entitlement To Vote Appellants' Debt
           Under the Agreement

---

[3]    See also In re ARN LTD. Ltd. Partnership, 140 B.R. 5, 10 (Bankr. D. Col. 1992)(finding any error as to classification harmless because it would not alter the result); In re Eagle Bus Mfg., Inc., 134 B.R. 584, 595 (Bankr. S.D. Tex. 1991)(finding that any error as to classification was harmless because the plan would have been confirmed regardless); Bankruptcy Rule 9005 ("When appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights.").

Because the parties agree that this Court must construe the Agreement under New Jersey law (Appellants' Brief at 19 and Coastal's Brief at 6 (both citing to New Jersey law)), this Court will interpret the Agreement under New Jersey law.  Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001)(applying New Jersey law where there was no dispute as to its application).

Under New Jersey law, contracts are interpreted according to their plain language.  Travelers Indm. Co. v. Damman & Co., Inc., 594 F.3d 238, 255 (3d Cir. 2010)("Under New Jersey law, we must interpret the parties' contract according to its plain language.").  Here, applying the plain language of the Agreement, Paragraph 3.2 of the Agreement permits Sturdy Bank to vote Appellants' claims in any proceeding referenced in Paragraph 3.1, which includes reorganization proceedings.  Accordingly, Sturdy Bank was permitted to vote Appellants' claims under the terms of the Agreement.[4]

---

[4]     Appellants also suggest that the Agreement was signed under questionable circumstances.  Because Appellants never raised this argument before the Bankruptcy Court, and because they were given an opportunity to generally address the voting assignment provision, any argument as to the circumstances of the signing is waived.  In re Kaiser Group Intern. Inc., 399 F.3d 558, 565 (3d

13

D.   Whether That Entitlement Violates The Bankruptcy
     Code

As an initial matter, because Appellants failed to argue to the Bankruptcy Court that the assignment of voting rights to Sturdy was prohibited by the Bankruptcy Code, this argument is waived.  Kaiser, 399 F.3d at 565.  And even if this Court were to consider this argument, it would reject it.

Under 11 U.S.C. § 510(a), bankruptcy courts will enforce a subordination agreement, like the Agreement, to the extent such agreement is enforceable under applicable nonbankruptcy law.  Appellants have identified no nonbankruptcy law that would render the voting rights provision unenforceable.  Appellants instead make four arguments, all based on bankruptcy law.

First, they argue that 11 U.S.C. § 510(a) is not applicable because it applies exclusively to priority and not to voting rights.  But, by its plain terms, Section 510(a) provides for the enforcement of a subordination agreement as a whole, without distinguishing between

_____

Cir. 2005)(recognizing general rule that "when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal.").

14

individual components of such agreements.  11 U.S.C. §
510(a).

Second, they argue the voting rights provision
conflicts with 11 U.S.C. § 1126(a), which permits "[t]he
holder of a claim" to accept or reject a plan.  They argue
that Sturdy is not a "holder" under the provision.  But
Section 1126(a) does nothing itself to foreclose the
assignment of a holder's voting rights to another.  In re
Aerosol Packaging LLC, 362 B.R. 43, 47 (Bankr. N.D. Ga.
2006)(reaching same conclusion); In re Avondale Gateway
Center Entitlement, LLC, No. CV10-1772, 2011 WL 1376997, at
*4 (D. Ariz. Apr. 12, 2011)(same); In re Curtis Center Ltd.
P'ship, 192 B.R. 648, 659-60 (Bankr. E.D. Pa. 1996)(same);
In re Inter Urban Broadcasting of Cincinatti, Inc., No. 94-
2382, 1994 WL 646176, at *2 (Bankr. E.D. La. Nov. 16,
1994)(same).[5]

Third, Appellants argue that voting rights are not
assignable because allowing their assignment would violate
public policy.  They argue that such rights are analogous

---

[5]     To the extent courts have concluded otherwise, this Court
disagrees. See In re 203 N. LaSalle Street P'ship, 246 B.R. 325,
331-32 (Bankr. N.D. Ill. 2000); In re SW Boston Hotel Venture,
LLC, 460 B.R. 38 (Bankr. D. Mass. 2011); In re Croatan Surf Club,
LLC, No. 11-194-8, 2011 WL 5909199 (Bankr. E.D.N.C. Oct. 25,
2011); In re Hart Ski Mfg. Co., Inc., 5 B.R. 734 (Bankr. Minn.

to the debtor's right to an automatic stay and to
discharge, which, they argue, cannot be waived pre-
petition, as a matter of public policy.  But with respect
to the right to the automatic stay, the majority view is
that even automatic stay rights can be waived.  In re DB
Capital Holdings, LLC, 454 B.R. 804, 814 (Bankr. D. Colo.
2011)(indicating that majority view was that such
provisions are enforceable); In re Pease, 195 B.R. 431, 433
(Bankr. D. Neb. 1996)(listing cases); See also In re Trans
World Airlines, Inc., 261 B.R. 103, 116 (Bankr. D. Del.
2001)(finding provision to be enforceable).  In addition,
there are meaningful differences in the strength of the
public policies behind, on the one hand, a debtor's rights
to discharge and to an automatic stay, and, on the other
hand, a creditor's voting right. Significantly, the
automatic stay is the "single most important protection" of
a debtor in bankruptcy and there is a "strong policy"
interest in providing debtors a "fresh start" through
discharge.  Acands, Inc. v. Travelers Cas. And Sur. Co.,
436 F.3d 252, 258 (3d Cir. 2006)(citing In re Cavanaugh,
271 B.R. 414, 424 (Bankr. D. Mass. 2001)); In re Luman, 238

---

1980).

B.R. 697, 704 (Bankr. N.D. Oh. 1999)(referencing "strong policy" interest in providing debtors a "fresh start"). There is no similar special solicitude for the protection of creditors, from fellow creditors, pre-petition. Creditor rights, including their attendant voting rights, can be freely traded in the ordinary course.  See In re Figter Ltd, 118 F.3d 635, 639-40 (9th Cir. 1997)(indicating that creditors' rights can be purchased and voted).  It would make little sense that a creditor could be free to sell its rights in full, but be barred from selling a portion.

Fourth, they argue that the provision conflicts with Bankruptcy Rule 3018.  That provision limits voting rights to "the creditor or equity security holder or authorized agent."  Federal Rule of Bankruptcy 3018.  Appellant argues that Sturdy is: (1) not "the creditor"; and (2) not an authorized agent because it is acting in its own interests and not at the direction and in the interest of Appellants. See In re 203 N. LaSalle Street P'ship, 246 B.R. 325, 331-32 (Bankr. N.D. Ill. 2000)(applying the same reasoning). This Court disagrees for two reasons.  First, as discussed above, under the Agreement, Sturdy sat in the shoes of

17

Appellants for all intents and purposes and it would
improperly elevate form over substance to view it as
anything other than the "creditor" for voting purposes. See
In re SubMicron Systems Corp., 432 F.3d 448, 455 (3d Cir.
2006)(recognizing "bankruptcy courts' equitable authority
to ensure that substance will not give way to form, that
technical considerations will not prevent substantial
justice from being done.")(quotation and citation omitted).
Second, to the extent Sturdy does not qualify as the
"creditor," it would qualify as an "authorized agent."
While Rule 3018 does not define "authorized agent," Federal
Rules of Bankruptcy Procedure 2019 and 3001 are
informative.  Those provisions only require an "authorized
agent" to provide the "instrument, if any, whereby the
[representative] . . . is empowered to act on behalf of
creditors" to establish its bona fides.  Office &
Professional Employees Intern. Union, Local 2 v. F.D.I.C.,
962 F.2d 63, 68-69 (D.C. Cir. 1992); In re Standard Metals
Corp., 817 F.2d 625, 631 (10th Cir. 1987)("The import of
this language is that each individual claimant must file a
proof of claim or expressly authorize an agent to act on
his or her behalf.").  No showing as to the agent's

18

interests, and its alignment, or lack thereof, with the creditor is required.

That absence suggests that the term "authorized agent" in those provisions contemplates an entity authorized to act on another's behalf and not any deeper inquiry into interests, motivation, or control. This Court would therefore interpret the term "authorized agent," in that context, as limited to whether the entity has been authorized to act on the creditor's behalf. Because the same terms in statutory schemes should be interpreted in a consistent manner, this Court will interpret Rule 3018 in the same manner. Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570 (1995)("[I]dentical words used in different parts of the same act are intended to have the same meaning."); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs, Ltd., 484 U.S. 365, 371 (1988)("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear"); In re Bomarito, 448 B.R. 242, 248 (Bankr. E.D. Cal. 2011)(applying these principles to the Bankruptcy Rules). And, because the Agreement authorized Sturdy to

19

vote on Appellants' behalf, it was an "authorized agent" under Rule 3018.

E.    Whether Sturdy Can Be Deemed to Have Accepted The Plan

Appellants make two arguments against the Bankruptcy Court's finding that Sturdy Bank "accepted" the plan on Appellants' behalf.  Again, neither argument was raised before the Bankruptcy Court and they are therefore waived. Kaiser, 399 F.3d at 565.  And, again, even considering them, the Court rejects them.

First, Appellants take issue with the Bankruptcy Court's failure to hold a formal vote.  But there is no dispute that Sturdy would have voted for the plan if a vote were held and at least one court has suggested that this type of formality can be forgiven in the interest of judicial efficiency.  In re Melcher, 329 B.R. 865, 875 (Bankr. N.D. Cal. 2005)(finding there was "nothing to gain" from vote where creditor had made its intentions clear). This Court agrees that a formal vote was unnecessary under the circumstances.  Bankruptcy courts "must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted [them] under the [Bankruptcy Code]" and "substance should not give way

to form[.]"  In re Fin'l News Network, Inc., 980 F.2d 165,

169 (2d Cir. 1992).

Second, they argue that that finding conflicts with 11

U.S.C. § 1126(g).  That provision provides that:

> Notwithstanding any other provision of this section, a
> class is deemed not to have accepted a plan if such
> plan provides that the claims or interests of such
> class do not entitle the holders of such claims or
> interests to receive or retain any property under the
> plan on account of such claims or interests.

11 U.S.C. § 1126(g).  Appellants argue that, no matter the

assignment of rights to Sturdy and their support of the

plan, pursuant to Section 1126(g), they cannot be deemed to

have accepted the plan.

In analyzing the terms of the statute, the Court first

considers its plain language and whether it is ambiguous.

In re Telegroup, Inc., 281 F.3d 133, 137 (3d Cir. 2002).

If it is ambiguous, the Court may use the provision's

legislative history and purpose as an aid.  Id. at 138.

With respect to Section 1126(g), the provision is ambiguous

as to whether a class "deemed not to have accepted a plan"

based on the treatment of their claims can nonetheless

affirmatively vote in favor of a plan.  In considering the

provision's legislative history, the accompanying Senate

Report reveals that 1126(g) was crafted as a practical tool

to relieve debtors of the burden of the ordinarily empty
exercise of collecting ballots for a class whose claims
were extinguished.  It reads in pertinent part:

> Subsection (g) provides that any class denied
> participation under the plan is conclusively deemed to
> have rejected the plan. There is obviously no need to
> submit a plan for a vote by a class that is to receive
> nothing. But under subsection (g) the excluded class
> is like a class that has not accepted, and is a
> dissenting class for purposes of confirmation under
> section 1130.

Senate Report No. 95-989. It does not appear to
contemplate, let alone be intended to limit, the rights of
entities, like Sturdy, who have bargained for a creditor's
voting rights and have adverse interests to the creditor.
Accordingly, based on the language of the statute and its
legislative history and purpose, this Court finds that
Section 1126(g) does not prevent Sturdy from voting in
favor of the plan.  In re Inter Urban Broadcasting, No. 94-
2382, 1994 WL 646176, at *2 (reaching same conclusion).
Holding otherwise would place this statute in conflict with
Section 510(a), which broadly allows for enforcement of
subordination agreements so long as they do not conflict
with nonbankruptcy law.  And this Court "should interpret
the Code in a manner that avoids a conflict between its

22

various sections." <u>In re Dow Corning Corp.</u>, 255 B.R. 445, 478 (E.D. Mich. 2000).

Finally, even if Section 1126(g) operated to prevent Sturdy from being "deemed" to have accepted the plan, any error was harmless and would not justify disturbing the plan.  <u>See</u> <u>Kane</u>, 843 F.2d at 647.  Section 1126(g) only applies when the entire <u>class</u> receives nothing.  11 U.S.C. § 1126(g)(applying "if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property").  As discussed above, Appellants could have been reclassified as Class III general unsecured creditors while maintaining the same treatment as under the confirmed plan and receiving nothing.  In that scenario, because the other creditors in Class III were scheduled to receive a distribution under the plan, Section 1126(g) would not be triggered.

IV.  <u>Conclusion</u>

In sum, this Court rejects each of Appellants' arguments that confirmation under Section 1129(a) was improper.  Accordingly, there was no impediment to

confirmation under this provision and the decision of the

Bankruptcy Court is AFFIRMED.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: June 28, 2013